The law should afford more protection than they now enjoy to unsophisticated persons who are injured by the negligence of another and then hurried into hasty, unwise and frequently unfair settlements by the diligence of trained claim adjusters whose main object in life is to get such settlements as speedily and at as low a figure as possible. But the legislature rather than the courts must make the new law necessary to meet that situation. On their part, judges can only make the established legal and equitable remedies as elastic as their nature permits. They should not ignore and cannot repeal them. Frequently we find an unfortunate litigant bound by a contract from which we would be happy to release him. But we cannot do so by legal means and so, regretfully, leave him where we find him. Releases present the problem more frequently perhaps but with no different legal factors than other contracts.
In this case, the diagnosis by the examining physicians was faulty, but that and its effects are not chargeable to defendant. In legal effect, the mistake was that of plaintiff alone — defendant did not know there was any mistake, and so there is no question of inequitable conduct. The release is of "any damage, loss or injury, which heretofore have been or which hereafter may be sustained by me [plaintiff] in consequence" of the accident. So it seems to *Page 162 
have done what was held not to have been accomplished in Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 113, 179 N.W. 642. In that case the court seemed to have considered that "there was no attempt to settle for any except" the injury known to exist at the time the release was executed. Here we have a release manifestly intended to cover and expressly including all damaging consequences of the accident and projecting itself around all future effects whatever they were. It should be given effect accordingly. In the Nygard case, 147 Minn. 109,113, 179 N.W. 642, which went to the utmost limit in avoiding a release, it was expressly recognized that "when parties intentionally settle for unknown injuries received in an accident, the release obtained is incontestable." Of course that is the law. Richardson v. C. M. St. P. Ry. Co. 157 Minn. 474,196 N.W. 643.
I have always supposed that the intention of a written contract was to be gathered from what is expressed by its language and that where upon application of that language to its subject matter it is plain that the parties intended but one thing, it is not permissible for either to say, and much less for any court to hold (as suggested in the Nygard case) that the thing so intended and expressed was not "within the knowledge or contemplation of the parties" [147 Minn. 112]. If that view is sound, it must follow that where damages for personal injury are settled by compromise and the contract discharges the claim for unknown as well as known damage there is no room for relief on the ground of mutual mistake. That is because the very contract is predicated on the possibility of mistake in the then assumptions of the parties concerning the nature, extent or ultimate effect of the injuries. It recognizes the possibility of such error and therefore expresses the intent to release as to unknown as well as known results.
On the question of construction of such a contract, it is plain that whoever is paying the money does so always for the purpose, unless some other is expressed, of discharging the whole claim once and for all, no matter what may come in the future. The moneys paid, frequently large in amount, are never parted with on the supposition *Page 163 
that the cause of action is being settled in part only — as to the known items of damage — and that it may be presented later and again as to another part — items of damage unknown at the time of the supposed compromise. It is because releases of the kind now in question deal with the unknown, and to a large extent with that which cannot be known, that the ordinary rules concerning relief on the ground of mutual mistake find no application. The possibility of mistake is one of the things within the contemplation of the parties, and so the rules concerning mutual mistake have "no application to cases of compromise, where doubts have arisen as to the rights of parties, and they have intentionally entered into an arrangement for the purpose of compromising and settling those doubts. Such compromises, whether involving mistakes of law or of fact, are governed by special considerations." 2 Pomeroy, Eq. Jur. (4 ed.) § 849. Quoting further from the same author — where a contract settles doubtful claims by compromise —
"Where parties have knowingly entered into a speculative contract or transaction, — one in which they intentionally speculated as to the result, — * * * if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief * * *. In such classes of agreements and transactions, the parties are supposed to calculate the chances, and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud." 2 Pomeroy, Eq. Jur. (4 ed.) § 855.
I construe the contract now involved as one releasing for unknown as well as known results; hence my reluctant disagreement with the majority opinion. *Page 164